LAW OFFICE OF ERIC I. MICHELMAN
Eric I. Michelman, Bar No. 145017
2301 Dupont Drive, Suite 530
Irvine, CA 92612
Telephone: (949) 553-1800
Facsimile: (949) 553-1880
email: ericmichelman@lawfirmofbusiness.com

Attorney for Plaintiff
A WALL STREET FUND I, LTD.,
a Florida limited partnership

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **A WALL STREET FUND I, LTD.**, a Florida limited partnership<br><br>Plaintiff,<br><br>vs.<br><br>**NEW WORLD CAPITAL CURRENCY FUND, L.P.**, a Delaware limited partnership, **NEW WORLD CAPITAL EQUITY FUND, L.P.**, a Delaware limited partnership, **NEW WORLD CAPITAL MANAGEMENT, LLC**, a Delaware limited liability company, **GREGORY DURAN**, an individual; and **DOES 1-10**;<br><br>Defendants. | Case No. 08 CV 1042 JAH (JMA)<br><br>**REPLY RE:**<br>**OSC RE PRELIMINARY INJUNCTION**<br><br>Judge: Hon. John A. Houston<br>Courtroom: 11<br>Date: July 11, 2008<br>Time: 10:30AM |

## I. INTRODUCTION.

Defendant Duran is the only defendant to oppose the instant Order to Show Cause Re: Preliminary Injunction ("OSC"). The other defendants, all being Defendant Duran's controlled entities in this securities fraud case, have not opposed the OSC. Defendant

1

**REPLY Re: PRELMINARY INJUNCTION**

Case No. 08CV 1042 JAH (JMA)

1  Duran's defenses are that (i) the Court does not have "personal jurisdiction" over Defendant
2  Duran, and (ii) the scope of the proposed preliminary injunction is too broad.

3       **A.  <u>Jurisdiction</u>.**  The Court does have, at the very least, "limited jurisdiction" over
4  defendant Duran, in that the (i) defendant Duran's contacts and activities in San Diego,
5  California are the basis for the Plaintiff's claims in this case, (ii) defendant Duran
6  purposefully directed his activities toward Plaintiff in San Diego, California, and (iii) given
7  the facts of this case, the exercise of personal jurisdiction by the Court is reasonable and
8  comports with "fair play and substantial justice".

9       **B.  <u>Scope of Injunction Will Maintain the Status Quo</u>**.  The proposed injunction is
10  designed to maintain the status quo and prevent further losses of Plaintiff's funds, if any
11  remain, pending the outcome of this case.  While Defendant Duran desires to trade for an
12  "employer" and for his "own account", there is no showing or basis upon which to determine
13  that the "employer" or his "own account" is not, in reality, utilizing the funds traceable to the
14  Plaintiff.  Defendant Duran is seeking license from the Court to continue to conduct the exact
15  sordid activities for which he has demonstrated his complete lack of trust and honesty, and
16  his propensity for misappropriation, conversion and malfeasance, with no assurance that
17  such funds he desires to trade are not, in fact, those belonging to the Plaintiff.

18

19  **II.  THE COURT HAS LIMITED SPECIFIC JURISDICTION OVER DEFENDANT
     DURAN BASED ON THE DEFENDANTS CONTACTS AND ACTIVITIES IN SAN
20  DIEGO, CALIFORNIA**

21       Plaintiff, A Wall Street Fund I, Ltd., with it's principal place of business in San
22  Diego, California, has been defrauded out of $750,000 by the actions of defendant Gregory
23  Duran who purposely directed his deceptive activities toward the Plaintiff in San Diego,
24  communicated with Plaintiff multiple times in San Diego and induced Plaintiff to "invest" in
25  Duran's scheme by having Plaintiff wire funds from San Diego to Duran's controlled
26  entities.

27       **A. <u>The Multiple Contacts in San Diego</u>**.  Defendant Duran had multiple contacts with
28  Plaintiff directed at Plaintiff in San Diego, California during the course and scope of the

fraud perpetrated against it.

First, was the communication of the fraudulent 5 and 3 year track record of the Currency Fund and the Equity Fund, respectively, which Plaintiff obtained in San Diego, California, through the Internet. This publication was designed to be viewed everywhere the Internet could be viewed and was reasonably calculated to reach California and constitute purposeful availment of the privileges of doing business in San Diego, California. (See, *United States SEC v. Carrillo*, 115 F3d 1540, 1545 (11th cir. 1997).

Second, was the telephone conversations between Defendant Duran and Thomas G. Buckley, Jr. on behalf of Plaintiff, while located in San Diego, wherein Plaintiff further investigated the New World Hedge Funds, the trading strategy employed by Defendant Duran, and to confirm the track record information which was published on the Internet. (See Buckley Decl at Para 9.)

Third, was the electronic transmission of Offering Memoranda for each of the New World Hedge Funds which was sent to Plaintiff in San Diego, California. (See Buckley Decl at Para. 10).

Fourth, was the telephonic and e-mail communication on November 29, 2007 by Defendant Duran to Plaintiff in San Diego, California, of revised wire instructions (which deviated from the instructions contained in the Offering Memoranda), and Plaintiff's November 30, 2007 confirmation of such wire transfer. See **Exhibit "A"** attached hereto.

Fifth, was Defendant Duran's email communications to Plaintiff on December 27, 2007, a copy of which is attached hereto as **Exhibit "B"**, with false information regarding December returns for the New World Hedge Funds, (See Buckley Decl. at Para 15.), and false promises of return of Plaintiff's funds on March 7, 2008 and March 15, 2008 (see Buckley Decl. at Paras. 23 and 24), **Exhibit "C" and "D"** attached hereto.

Finally, Defendant Duran directed the April 11, 2008 "insolvency" letter to Plaintiff in San Diego, California (See Buckley Decl. at Para 25 and Exhibit "A" attached thereto).

**B. Defendant Duran's Multiple and Purposeful Directed Activities in San Diego, California to Lure Funds From Plaintiff and To Lull Plaintiff Constitutes Sufficient Contact For A Finding Of Personal Jurisdiction.**

Defendant Duran attempts to distance himself from the deceptive and fraudulent communication by claiming the false track record information on the Internet was the responsibility of other "employees of the limited partnerships other than Mr. Duran", and by dismissing with short shrift the relevance and substance of the subsequent pre- and post-investment communications between Defendant Duran and the Plaintiff.

By engaging in the pre-investment telephonic conversation, Defendant Duran ratified such fraudulent track record information by promoting the "performance" of New World Hedge Funds in the attempt to induce the Plaintiff's investment. This was culminated by Defendant Duran's November 30, 2007 telephone call with Plaintiff and prior day email to Plaintiff with "new" wiring instructions for Plaintiff's investment (**Exhibit "A"**). Moreover, by Defendant Duran's own admission, all of his post-investment communications with the Plaintiff regarding hedge fund performance, were, at the very least false statements in that "all of the money Plaintiff invested ....was lost...". Opposition at Page 3, lns 11-13.

The essence of Defendant Duran's communications with Plaintiff in San Diego, California were a series of substantial, continuous and systematic lies designed to have Plaintiff part with its money in a scheme which then perpetuated itself by giving the Plaintiff the belief its funds were performing well and were safe, and were soon to be returned to Plaintiff.

Given this conduct by Defendant Duran, it is reasonably foreseeable that Defendant Duran should reasonably have anticipated that he would be hailed into court in San Diego, California, given his conduct. See, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Although in this case, there were several acts by Defendant Duran, just a single act may support limited personal jurisdiction over a non-resident. *McGee v International Life Insurance Co.,* 355 US 220 (1957). In this case, the harm caused by representing a false historical performance track record of the New World Hedge Funds given there was no prior history to such hedge funds was unquestionably intentional conduct

4
**REPLY Re: PRELMINARY INJUNCTION**
Case No. 08CV 1042 JAH (JMA)

designed to induce Plaintiff's investment. The "purposeful availment" test of personal jurisdiction is satisfied given that Defendant Duran knew or should have known that the harm to Plaintiff, as a result of such false information inducing the Plaintiff's investment, would be suffered in San Diego, California. *Dole Food Co. v. Watts*, 303 F3d. 1104, 1111 (9th Cir. 2002). Finally, email messages as evidenced herein, to a forum state's resident supports the exercise of specific jurisdiction over the non-resident sender. See, *Internet Doorway, Inc. v. Parks,* 138 F. Supp.2d 773, 774 (SD MS 2001), and *Verizon Online Services Inc. v. Ralsky*, 203 F. Supp.2d 601, 610 (ED VA 2002).

### C. This Court's Exercise of Personal Jurisdiction is Reasonable and Comports with "Fair Play and Substantial Justice".

Given that Defendant Duran has deliberately engaged in significant activities within California i.e. the forum state, "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp. v. Rudzewicz*, 471 US 462, 477 (1985). The burden now shifts to the defendant. When a defendant "purposefully has directed his activities at forum residents...he [the defendant] must present a compelling case" that the exercise of jurisdiction would in fact be unreasonable. Id. at 476. Defendant Duran must now bear the burden of showing why it is unreasonable for him to defend himself in San Diego, California, for his actions directed to and in San Diego, California, with the intent of having the San Diego, California resident part with its funds, and thereby causing damages to that San Diego, California resident as a result of Defendant Duran's false and misleading statements, and subsequent deceptive conduct.

## III. THE SCOPE OF THE PRELIMINARY INJUNCTION WILL MAINTAIN THE STATUS QUO PENDING THE OUTCOME OF THE CASE.

The proposed injunction is designed to maintain the status quo and prevent further losses of Plaintiff's funds, if any remain, pending the outcome of this case.

### A. Defendant Duran Is Willing To Stipulate To An Injunction That Allows Continued Trading But There is No Assurance His Activities Will Not Affect Plaintiff's Funds.

In his Opposition, Defendant Duran is willing to stipulate to entry of a preliminary injunction barring him from "'investing or trading any funds and investments' that belong to or are otherwise traceable to Plaintiff's money."

As such, Defendant Duran's sole desire is that he wants to be free to trade and invest other people's money other than the Plaintiff. At this stage of the litigation, all Plaintiff really knows is that its $750,000 has disappeared into the hands of Defendant Duran based upon false pretenses. Plaintiff's interest is in the recovery of that $750,000. At this stage of the litigation it is presently not known exactly where the $750,000 is located. It could have been traded and lost, it could have been traded and parked in nominee accounts, it could have been misappropriated. The possibility exists that the funds have directly or indirectly landed in the possession of the Defendant or third parties, and now the Defendant wants the license and freedom to further engage in transactions which will make tracing such funds more complex or land in the hands of BFP's. In any event, at this stage of the litigation, Plaintiff is not able to trace its funds to know exactly whose funds it is that Defendant Duran desires to trade under the guise of 3rd parties, and such ultimate tracing effort would require the consumption of substantial resources of the Plaintiff.

While Defendant Duran desires to trade for an unidentified "employer" and for his "own account", there is no showing or basis upon which to determine that the "employer" or his "own account" is not, in reality, utilizing the funds traceable back to the Plaintiff.

### B. Balancing the Benefits and Burdens Weighs in Favor of Plaintiff

The Court in determining whether to issue the preliminary injunction must engage in a balancing test and weigh the benefits and burdens to each of the parties.

Here, Defendant Duran is only interested in himself personally, and has not answered the call to defend his Hedge Fund Partnerships. In effect, he has abandoned the ships containing his paying passengers which he has claimed to have sunk (Duran Decl ¶6). Defendant incomprehensibly claims that it is in Plaintiff's interest that Defendant Duran be able to continue to trade so that he can "earn a living" and pay a lawyer to defend him (Duran

Decl ¶10) else Plaintiff's jeopardy *increases*. Oppos. at p.6 lns 9-10.

If, as the Defendants claim, the "hedge funds" are insolvent, and there are no funds remaining, then the burden of the proposed Preliminary Injunction to Defendant Duran will be that he will have to use alternative methods to derive an income pending the outcome of this case.

Alternatively, the burden to Plaintiff of not obtaining the proposed Preliminary Injunction is the danger of not preserving a fund in which Plaintiff has a claim, *Decker v. Independence Shares Corp*, 311 US 282, 290, 61 S. Ct. 229, 234 (1940), *Hendricks v. Bank of America, N.A*. 408 F.3d 1127, 1141 (9th Cir. 2005) [defendant was shown to be insolvent], and to preserve equitable remedies *Walczak v. EPL Prolong, Inc.*, 198 F3d.725, 732 (9th Cir. 1999) [injunction against liquidating corporate assets in suit for breach of fiduciary duty], and thus would cause irreparable injury to the Plaintiff.

**IV. CONCLUSION**

The Court does have limited special personal jurisdiction over Defendant Gregory Duran as a result of Defendant Duran's purposeful contacts in San Diego, California including the inducement of having the Plaintiff wire $750,000 from San Diego to Defendant Duran's control. Furthermore, the only chance at this stage of the litigation for Plaintiff to preserve a fund in which it has a claim is to order the Preliminary Injunction until discovery can be had.

Date: July 10, 2008                         s/Eric I. Michelman
                                            Eric I. Michelman
                                            Attorney for Plaintiff
                                            A WALL STREET FUND I, LTD.

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am a resident in the county of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is **2301 Dupont Drive, Suite 530, Irvine, California 92612.**

On July 7, 2008, I served REPLY RE: OSC RE PRELIMINARY INJUNCTION and EXHIBITS A, B, C, D thereto on:

**Clinton W. Marrs, Esq.,**
**Vogel Campbell & Blueher, P.C.,**
**6100 Uptown Blvd., NE, Ste 500,**
**Albuquerque, New Mexico 87110,**

**legal counsel for Defendant Gregory Duran via e-mail pursuant to the written consent of said Clinton W. Marrs, Esq.**

**[ ](BY MAIL)[C.C.P. § 1013(a)(1)Person Depositing In Mail]** On _____ I deposited such envelope in the mail at **Irvine, California**. The envelope was mailed with postage thereon fully prepaid.

**[ ](BY FACSIMILE)[C.C.P. § 1013(c)]** On _____ at **Irvine, California**, I transmitted the foregoing document at approximately _____ a.m./p.m. via facsimile to the addressee(s) utilizing the appropriate facsimile numbers set forth above. The document was transmitted from facsimile machine number 949-553-1880. The transmission was reported as complete and without error. Attached is a copy of the transmission report; the report was properly issued by the transmitting facsimile machine.

**[ ] BY PERSONAL DELIVERY.** On _____, I caused such envelope to be delivered by hand to the offices of addressee(s) set forth above.

**[ ](BY OVERNIGHT EXPRESS)[C.C.P. § 1013(c)]** On _____, at **Irvine, California**, I deposited such envelope in a box or other facility regularly maintained by Overnight Express, an express service carrier, or delivered to a courier or driver authorized by this express service carrier to receive documents, together with an unsigned copy of this declaration, in an envelope or other package designated by this express service carrier, with delivery fees paid or provided for.

**[X](FEDERAL)** I certify and declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on **July 10, 2008**

          s/ Eric I. Michelman
          Eric I. Michelman

FROM : TOM BUCKLEY                FAX NO. :                    Jun. 05 2008 04:08PM P2
Case 3:08-cv-01042-JAH-JMA    Document 9-2    Filed 07/10/2008    Page 1 of 4

Page 1 of 1

**tombuckley@sbcglobal.net**

From: "Tom Buckley" <tombuckley@sbcglobal.net>
To: "Gregory Duran" <gduran@neworldcapitalmgmtllc.com>
Sent: Friday, November 30, 2007 11:55 AM
Subject: Re: Wiring Instructions for NWCM LP

11/30/2007

GREG

CONFIRMING OUR CONVERSATION THIS ORNING WE HAVE WIRED $ 750,000 WHICH IS $ 500000 FOR THE cURRENCY fUND AND $ 250,000 FOR THE EQUITY FUND.

YOU SAID THAT YOU WOULD PREFER THAT WE FEDEXED THE ADMISSION FORMS & AML RATHER THAN FAXING AND ALSO THJAT YOU WOULD EMAIL US ACCEPTANCE OF THE FUNDS FOR DECEMBER INVESTMENT.

THEY SHOULD BE IN YOUR ACCOUNT THIS AFTERNOON.

Regards
Tombuckley@sbcglobal.net
858-277-5931 fax 858-277-3990
10975 Promesa Dr San Diego Ca 92124
Tom Buckley- A Wall Street Fund :
--

----- Original Message -----
From: Gregory Duran
To: tombuckley@sbcglobal.net
Sent: Thursday, November 29, 2007 9:06 AM
Subject: Wiring Instructions for NWCM LP

Bank of America
2308 Cerrillos
Santa Fe, NM 87505

Account Number: 0043901 19034
ABA wiring instructions: 026009593

Regards
Tombuckley@sbcglobal.net
858-277-5931 fax 858-277-3990
10975 Promesa Dr San Diego Ca 92124
Tom Buckley- A Wall Street Fund

http://www.hedgefund.net/hedgeplus/hp_Performance_Basic.aspx?fund_id=21514&cT... 5/19/2008


EXHIBIT A

tombuckley@sbcglobal.net

**From:** "Gregory Duran" <gduran@neworldcapitalmgmtllc.com>
**To:** "TOM BUCKLEY" <tombuckley@sbcglobal.net>
**Sent:** Thursday, December 27, 2007 8:53 AM
**Subject:** Re: November returns

Tom:

The returns for December have been good, considerably. We have been extremely nimble. The equity portfolio could manage around a 2.5% +- return. All this has happened within the last week.

Volume is very tepid. I am not holding anything until we see some strong volume.

In terms of the currency side, we should have a 1.23% +- return. The breakdown in the gbp/usd and eur/usd was extremely important. I have been anticipating a pull back for some time.

In terms of AUM. We are getting in a total of $12.5 million into the L.P.'s. We have been getting a lot of interest from AG Edwards advisors.

Hope all as well. If I could be of additional help, please feel free to contact me

Sincerely,


Gregory Duran
Chief Executive Officer of Investments
New World Capital Management LLC
312 Read Street
Santa Fe, NM 87501
505-989-3876
www.neworldcapitalmgmtllc.com


"This message is provided for informational purposes only and does not constitute an offer to sell, nor a solicitation of an offer to buy, securities."

----- Original Message -----

**From:** TOM BUCKLEY
**To:** gduran@neworldcapitalmgmtllc.com
**Sent:** Thursday, December 27, 2007 7:59 AM
**Subject:** Re: November returns

Greg

Could you give me an educated guess for Dec returns

THANKS
Tom Buckley
A Wall Street Fund
tombuckley@sbcglobal.net
561-391-6862 fax-561-447-0819
7 Royal palm way ste 308
Boca Raton Fl 33432

EXHIBIT B

**tombuckley@sbcglobal.net**

**From:** "Gregory Duran" <gduran@neworldcapitalmgmtllc.com>
**To:** <tombuckley@sbcglobal.net>
**Sent:** Friday, March 07, 2008 7:30 AM
**Subject:** Equity Fund money

Tom:

Just wanted to give you heads up. We will be sending those funds at the end of next week. Thanks Tom

Gregory Duran
Chief Executive Officer of Investments
New World Capital Management LLC
312 Read Street
Santa Fe, NM 87501
505-989-3876
www.neworldcapitalmgmtllc.com

EXHIBIT C

tombuckley@sbcglobal.net

From: "Gregory Duran" <gduran@neworldcapitalmgmtllc.com>
To: "'Thomas Buckley'" <tombuckley@sbcglobal.net>
Sent: Saturday, March 15, 2008 8:42 AM
Subject: Important Information

Thomas:

I just wanted to clarify that based on the offering memorandum and the closing of the equity fund. We felt it is best for our clients and the timing of the funds closing, to be on our ending of our fiscal quarter, which is the end of March, at which time assets from the fund will be dispersed or converted to the currency fund. Let me know if you have any questions or comments. Thank you.

Sincerely,

Gregory Duran
Chief Executive Officer of Investments
New World Capital Management LLC
312 Read Street
Santa Fe, NM 87501
505-989-3876
www.neworldcapitalmgmtllc.com

EXHIBIT D