1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10   A WALL STREET FUND I, LTD., a          )   Civil No.08cv1042 JAH (JMA)
     Florida limited partnership,           )
11                                          )   **ORDER DENYING DEFENDANT**
                           Plaintiff,       )   **DURAN'S MOTION TO DISMISS**
12   v.                                     )   **[Doc. No. 15]**
                                            )
13   NEW WORLD CAPITAL CURRENCY             )
     FUND, L.P., a Delaware limited         )
14   partnership, et. al.,                  )
                                            )
15                         Defendants.      )
                                            )
16

17          Pending before the Court is Defendant Gregory Duran's motion to dismiss for lack

18   of personal jurisdiction.  After a thorough review of the parties' pleadings and hearing oral

19   argument, the Court DENIES Defendant's motion.

20                              **BACKGROUND**

21          On June 12, 2008, Plaintiff Wall Street Fund I, Ltd. filed a complaint for recision

22   of contract due to fraud, security fraud, controlling person liability, security fraud under

23   California law, breach of fiduciary duty, constructive fraud, breach of contract, negligence,

24   negligent misrepresentation and conversion against New World Capital Currency Fund,

25   L.P. ("Currency Fund"), New World Capital Equity Fund, L.P. ("Equity Fund"), New

26   World Capital Management, LLC ("Capital Management"), Gregory Duran and Does 1

27   through 10.

28          Plaintiff alleges it, through its general partner Thomas Buckley, invested $750,000

08cv1042

in two hedge funds, Defendants Currency Fund and Equity Fund on or about November 30, 2007, after investigating the historical performance information indicating the funds had been in existence for several years and generated certain percentages of income every year. Complaint ¶¶ 18-29. Plaintiff further alleges it delivered a written request to Defendants seeking a full redemption of its investment in the Equity Fund on or about March 7, 2008, and received an email response from Defendant Duran that the funds would be sent by the end of the week. Id. ¶¶ 40-41. Defendant Duran sent another email on or about March 15, 2008, suggesting the assets for the fund would be dispersed at the end of March, the end of the fiscal quarter. Id. ¶ 42. Plaintiff alleges it never received any funds from Defendants and on April 11, 2008, received a letter from Capital Management stating that trading losses rendered the funds insolvent. Id. ¶ 44. Plaintiff further alleges, according to the records of the Delaware Secretary of State, the date of organization of the Equity Fund was July 10, 2008, the date of organization of the Currency Fund was September 19, 2007, and the date of organization of Capital Management was July 21, 2007, months before Plaintiff's investment, not years as the information provided by Defendants initially indicated.

Plaintiff filed an *ex parte* motion for temporary restraining order on July 3, 2008. The Court granted the motion and set the order to show cause hearing for July 11, 2008. Defendant Duran filed the pending motion to dismiss and a response to the order to show cause on the preliminary injunction *nunc pro tunc* to July 11, 2008.[1] Plaintiff filed a reply in support of the preliminary injunction, which included argument opposing Defendant's motion to dismiss on July 10, 2008.

A hearing was held on July 11, 2008. Eric Michelman appeared on behalf of Plaintiff. Defendant Duran appeared with counsel Clinton Marrs. No other Defendants appeared or otherwise responded to the motion. After hearing oral argument and

---

[1]Defendant was directed to file a response on or before July 9, 2008. Although the Court did not receive the document until July 11, 2008, Defendant indicated he sent the response via overnight delivery to the Clerk's office. Additionally, Plaintiff's reply which responds to the arguments in Defendant's motion indicates the document was served on July 9, 2008 as directed.

1  providing the parties until July 14, 2008 to file additional briefing on the pending issues.

2  Plaintiff filed a surreply and Defendant lodged his reply on July 14, 2008.

3  **LEGAL STANDARD**

4  Under Fed. R. Civ P. 12(b)(2), a court may dismiss a case for "lack of jurisdiction

5  over the person."  To survive a motion to dismiss, a plaintiff must make a *prima facie*

6  showing of jurisdictional facts to support the exercise of personal jurisdiction.  See Ballard

7  v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995).  The Ninth Circuit has established a two

8  prong test for determining if the Court's assertion of personal jurisdiction is proper.  This

9  Court's exercise of "'jurisdiction must comport with the state long-arm statute, and with

10 the constitutional requirement of due process.'"   Mattel, Inc., v. Greiner & Hausser

11 GMBH, 354 F.3d 857, 863 (9th Cir. 2003) (quoting Ziegler v. Indian River County, 64

12 F.3d 470, 473 (9th Cir. 1995)).

13 California's long arm statute provides that "a court of this state may exercise

14 jurisdiction on any basis not inconsistent with the Constitution of this State or of the

15 United States." Cal. Civ. Proc. Code § 410.10 (2003).  Because California law allows the

16 exercise of jurisdiction to the same extent as due process under the United States

17 Constitution, the only question is whether the exercise of jurisdiction over the defendant

18 is constitutional.  See Mattel, 354 F.3d at 863.

19 Under due process analysis, the Court may only exercise jurisdiction in accord with

20 "traditional notions of fair play and substantial justice," thus the nonresident defendant

21 is required to have "certain minimum contacts" with the forum state in order for

22 jurisdiction to be proper.  Id. (quoting International Shoe Co. v. Washington, 326 U.S.

23 310, 316 (1945)).

24 "Personal jurisdiction may either be general or specific."  Gator.com Corp. v. L.L.

25 Bean, Inc., 341 F.3d 1072, 1076 (9th Cir. 2003) (citing Panavision Int'l, L.P. v. Toeppen,

26 141 F.3d 1316, 1320 (9th Cir. 1998)).  General jurisdiction exists where a nonresident

27 defendant's activities within a state are "substantial" or "continuous and systematic."

28 Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1287 (9th Cir.

1977).  In the absence of general jurisdiction, a nonresident defendant may still be sued in the forum if specific jurisdiction exists.  Id.

Plaintiffs bear the burden of making a *prima facie* showing that jurisdiction is proper. Mattel, 354 F.3d at 862 (citing Harris Rutsky, 328 F.3d at 1128).  Plaintiffs need only make a *prima facie* showing that personal jurisdiction exists but "cannot 'simply rest on the bare allegations of [the] complaint.'"  Id.; see Ochoa v. J.B. Martin and Sons Farms, Inc., 287 F.3d 1182, 1187 (9th Cir. 2001).  "To make that showing, [plaintiffs] need only demonstrate facts that, if true, would support jurisdiction over the [d]efendants."  Id. "'Conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a *prima facie* case for personal jurisdiction exists.'" Gator.com Corp. v. L.L. Bean, Inc., 341 F.3d 1072, 1075-76 (9th Cir. 2003) (quoting A.T.&T. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996)); see also Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001).

## DISCUSSION

Defendant maintains this Court lacks jurisdiction over him.  He argues he has no contacts with California sufficient to meet the "continuous and systematic" standard for general jurisdiction and his contacts with California arising out of the Currency Fund and the Equity Fund are insufficient to support specific jurisdiction.  Specifically, Defendant argues he did not post the information on the website viewed by Plaintiff prior to Plaintiff's investment in the funds, and the two or more phone calls with Defendant and the three emails are insufficient to support the Court's exercise of personal jurisdiction.

Plaintiff argues the court has limited specific jurisdiction over Defendant Duran based upon Defendant's contacts and activities in San Diego, California.  Plaintiff maintains Defendant had multiple contacts with Plaintiff and directed at Plaintiff in San Diego, including: (1) the internet posting of the fraudulent five and three year track record for the Currency Fund and Equity Fund on www.hedgefunds.net; (2) telephone conversations between Defendant and Thomas Buckley, Plaintiff's general partner, while in San Diego discussing the track record information published on the internet; (3) an

electronic transmission of Offering Memoranda for the funds sent to Plaintiff in San Diego; (4) telephonic and email communications on November 29, 2007, by Defendant to Plaintiff in San Diego of revised wire instructions and Plaintiff's November 30, 2007 confirmation of the wire transfer; (5) Defendant's email communications to Plaintiff on December 27, 2007, with false information regarding the December returns for the funds, false promises to return Plaintiff's funds on March 7, 2008 and March 15, 2008; and (6) the April 11, 2008 insolvency letter to Plaintiff in San Diego. Plaintiff submits copies of the emails and the letter it offers in support of jurisdiction. See Pla's Exhs. A, B,C, D. Plaintiff argues that although Defendant tries to distance himself from the false information posted on the website, Defendant ratified the information by promoting the performance of the funds in an attempt to induce Plaintiff's investment. Plaintiff further argues, given Defendant's conduct, it is reasonably foreseeable that Defendant would be haled into court in San Diego.

In reply, Defendant argues there is no evidence that he posted the information on the internet and Plaintiff provides no evidence that the website is more than a passive website and is therefore insufficient to support minimum contacts. Defendant further argues Plaintiff's evidence of a handful of telephone and email communications between he and Buckley are insufficient. He contends there is no evidence Plaintiff was in San Diego when he communicated via email and telephone, because Plaintiff uses both a Florida and California address and wireless communication technology allows Buckley to communicate from anywhere.

In its surreply, Plaintiff argues Defendant's conduct meets the "effects" test, because Defendant induced Plaintiff to wire $750,000 into Duran's control, Duran was aware he was dealing with Plaintiff in California given the address on the email, and the completed admission forms were sent to Duran by Plaintiff which lists a San Diego, California address for all months excluding January and February. In support of its contention that Defendant was aware he was dealing with Plaintiff in San Diego, Plaintiff submits (1) a copy of an invoice from A1A Corporate Services, Inc. which contains a San Diego,

08cv1042

California address for Plaintiff.  Pla's Exh. 1; (2) a copy of the "Subscriber Information Form" for the Funds included two addresses for Plaintiff, a Florida address is listed under the primary contact information with the note, "use January thru March" and a San Diego, California address is listed under secondary contact information with the note "use April thru December."  Pla's Exh. 2; and (3) a copy of Plaintiff's Schwab One Account showing a San Diego, California address.  Pla's Exh. 3.

**I.  Specific Jurisdiction**

The Ninth Circuit has established a three part test to determine whether there is specific jurisdiction over a defendant.  "'Specific jurisdiction exists if (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privilege of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable."  Mattel, 354 F.3d at 863 (quoting Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000)).

**II.  Analysis**

**A.  Purpose Availment**

The first prong of the test encompasses two distinct concepts - "purposeful availment" and "purposeful direction."  See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797 (9th Cir. 2004).  Suits sounding in contract generally apply the "purposeful availment" analysis while those sound in tort apply "purposeful direction."  Id.  Plaintiff's action asserts claims under both.

**1.  Purposeful Direction**

The "purposeful direction" analysis applies an "effects" test which requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state.  See Yahoo! Inc. v. La Ligue contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199 (9th Cir. 2006).

Plaintiff alleges Defendant provided him fraudulent information to convince

Defendant to invest in the hedge funds and after receiving the money, sent a fraudulent email regarding the hedge funds' returns. Accordingly, Plaintiff demonstrates Defendant committed an intentional act. Plaintiff also provides evidence that its principal place of business is in California and its general partner spends most of the year in California and Defendant was aware of Plaintiff's general partner's presence in California when he engaged in telephone calls and email correspondence with Mr. Buckley to induce Plaintiff to invest the money and to delay Plaintiff from reimbursing its invested funds. Therefore, the evidence demonstrates Defendant aimed his actions at California. See Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002) (Finding the defendant's actions were expressly aimed at the forum state when the defendant knew the state was the plaintiff's principal place of business, knew the plaintiff's decision-makers were located in the state and communicated with the decision-makers). Furthermore, Plaintiff, a partnership with its principal place of business in California, demonstrates it suffered significant economic harm in California. See id.

**2. Contract Claims and Purposeful Availment**

For contract actions the analysis entails a determination of whether the defendant purposefully avails himself of the privilege of conducting activities within the forum state, invoking the benefits and protections of its laws. See Id. at 802. An individual's contract with an out-of-state party alone cannot automatically establish purposeful availment. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985). Additional factors, including, prior negotiations and contemplated future consequences, the terms of the contract and the parties' course of dealing must be evaluated to determine "whether the defendant purposefully established minimum contacts with the forum." Id. at 479.

The allegations and evidence demonstrate Plaintiff reviewed the web posting on www.hedgefunds.net and obtained information on the funds. "[M]ere web presence is insufficient to establish personal jurisdiction." Holland America Line Inc. v. Wartsila North American, Inc., 485 F.3d 450, 460 (9th Cir. 2007). Plaintiff provides no evidence or argument that the website in question is more than a passive website, but instead argues

Defendant either posted the information or ratified the information found on the website. Whether or not Defendant himself posted the information, posting information on a "passive website", without more, is insufficient to demonstrate Defendant purposefully directed his activity to California.  See Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir. 1997); Panavision International L.P. v. Toeppen, 141 F.3d 1316 (9th Cir. 1998).

The remaining contacts between Defendant and Plaintiff entail pre and post investment telephone, email and written communications.  The Ninth Circuit has generally held telephone and mail communication are insufficient to establish purposeful availment of the benefits and protections of a forum state.  See Peterson v. Kennedy, 771 F.2d 1244, 1262 (9th Cir. 1995) (Stating Ninth Circuit and California courts have concluded the use of the mail, telephone calls and other international communications do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.") (internal quotations omitted); see also Gray & Co. v. Firstenberg Machinery Co., Inc., 913 F.2d 758 (9th Cir. 1990) (Describing telephone calls, and exchange of an invoice and purchase order without evidence of the parties contemplating a continuing relationship as "attenuated contacts" and finding them insufficient to establish minimum contacts.);  Sher v. Johnson, 911 F.2d 1357 (9th Cir. 1990) (Finding acceptance of payment from a California bank, phone calls and letters did not establish purposeful availment).  The Court finds, however, that the nature of the telephone and email communications surrounding the transaction in this case support an exception to the general rule.

After reviewing the website, "Plaintiff further investigated" the funds via a telephone communication between Plaintiff and Defendant.  After deciding to invest in the funds, Plaintiff received a wire transmission of the offering memoranda in California and wired the funds and sent admission forms from California to Santa Fe, New Mexico. The admission forms contained two addresses, one in California and one in Florida.  The Florida address is used only three months out of the year.  The subject of the contract involved hedge funds organized and existing under the laws of Delaware with principal

places of business located in Santa Fe, New Mexico.   There also were several email communications between the parties.  One of which contained a San Diego address for Plaintiff and one of which contained a Florida address for Plaintiff.  The facts and allegations show Defendant engaged in a commercial transaction with Plaintiff.  There are no facts to suggest Defendant initiated the call or otherwise solicited Plaintiff's business.  However, the investment contemplated an ongoing commercial relationship between Plaintiff and Defendant.  Additionally, the evidence supports that Defendant was aware he was dealing with someone in California in light of the fact Plaintiff's principal place of business is listed as San Diego and the admission documents noted Plaintiff's location in San Diego nine months of the year.  Thus, the remaining emails from Defendant, in particular the emails promising Plaintiff the return of its funds, show Defendant purposefully availed himself of the benefit of doing business in San Diego, California.  Based upon the circumstances surrounding Plaintiff's investment into the hedge funds, the Court finds Defendant's contacts sufficiently demonstrate he purposefully availed himself of the benefits of the forum state.

Even if the circumstances surrounding the contract in the action did not demonstrate purposeful availment, the Court may still exercise jurisdiction over Defendant based upon pendant personal jurisdiction.  A court may compel a defendant to defend against a claim for which it lacks personal jurisdiction if it "aris[es] out of a common nucleus of operative facts" with a claim for which the court has personal jurisdiction.  Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1181 (9th Cir. 2004).  As discussed above, the Court finds Plaintiff establishes purposeful availment as to the tort claims.  Furthermore, the contract claims and the tort claims are based upon Plaintiff's investment in the two hedge funds and therefore, arise from the same set of operative facts.

//

//

**B. Arising Out of Defendant's Forum-related Activities**

08cv1042

1   The Ninth Circuit applies a "'but for' test to determine whether a particular claim

2   arises out of forum related activities." Ballard, 65 F.3d at 1500.  The question is whether

3   "but for" Defendant's actions in California, Plaintiff's tort claims would not have arisen.

4   The Court finds, but for Defendant's alleged fraudulent representations to Plaintiff

5   regarding the hedge funds and the return of the investment, Plaintiff's tort claims based

6   upon fraud and misrepresentation would not have arisen.

7   **C.  Exercise of Jurisdiction is Reasonable**

8   The third prong of the test is whether the exercise of jurisdiction is reasonable.

9   Reasonableness is presumed once the court finds purposeful availment.  Sher, 911 F.2d

10  at 1364.  In determining the reasonableness of jurisdiction, courts consider seven factors:

11  (1) the extent of purposeful injection; (2) the burden on the defendant in defending in the

12  forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the

13  forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution

14  of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient

15  and effective relief; and (7) the existence of an alternative forum.  Dole Food, 303 F.3d

16  at 1114.  Defendant has the burden to demonstrate this Court's exercise of jurisdiction

17  is unreasonable.  See Burger King, 471 U.S. at 477.  Defendant fails to rebut the

18  presumption of reasonableness.

19  As discussed above, Defendant purposefully injected himself by providing false

20  information regarding the hedge funds and falsely promising the return of Plaintiff's

21  investment.  Although Defendant, a resident of New Mexico, may endure a burden of

22  having to travel to California to defend against the lawsuit, he provides no information as

23  to the extent of his burden.  Furthermore, advances in communications and transportation

24  have significantly reduced the burden of litigating in another state.  Insurance Co. of

25  Northe America v. Marina Salina Cruz, 649 F.2d 1266 (9th Cir. 1981).  New Mexico,

26  Defendant's place of residence and the hedge funds and Capital Management's principal

27  place of business is an alternate forum.  However, the extent of a conflict with the

28  sovereignty of Defendant's state and its impact on the reasonable exercise of jurisdiction

1  by this Court is outweighed by the remaining factors.  California clearly has an interest in

2  adjudicating disputes involving companies whose principal place of business is located in

3  the state.  Additionally, there is no information demonstrating another forum would be

4  more convenient than California,  and California would serve Plaintiff's interest in

5  obtaining relief.  The Court finds its exercise of jurisdiction over Defendant is reasonable.

6       Accordingly, the Court finds assertion of personal jurisdiction over Defendant

7  comports with due process.

8                              **CONCLUSION AND ORDER**

9       Based on the foregoing, IT IS HEREBY ORDERED Defendant's motion to dismiss

10  is **DENIED**.

11  DATED:  July 18, 2008

12

13                                   JOHN A. HOUSTON
                                    United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11